## Longstreth and Cook *against* Gray.

In an action upon a bond conditioned for the payment of several sums at different periods, in which breaches had not been assigned, no defence having been made, a judgment was rendered pursuant to a rule of court; upon which the plaintiff took out execution, as well for the instalments due at the time suit was brought, as for those not then due, but which had become due afterwards. *Held*, that such execution was erroneous, and that the plaintiff was not entitled to execution for the sums which became due after suit brought, without being put to a *scire facias*.

PURSUANT to a rule of the circuit court, the plaintiffs, having signed judgment for want of an affidavit of defence, for the penalty of a bond, with condition to pay 1302 dollars and 82 cents, on the 22d of January 1831, as well as the like sum for three successive years, but without having assigned breaches, had issued an execution, not only for the instalment due at the impetration of the writ, but for another grown due before the judgment. This execution had been set aside by the chief justice at a circuit court for Alleghany county, immediately preceding the present term, with leave to take out execution for the instalment due at the commencement of the action ; and the plaintiffs now moved for leave to take out execution for the second instalment also, without being put to a *scire facias*.

*W. W. Fetterman*, for the motion.
*Foster*, contra.

The opinion of the Court was delivered by
GIBSON, C. J.—Ever since the decision in *Collins* v. *Collins*, 2 *Burr.* 820, it has been considered as settled, that the stat. 8 and 9, *W.* 3, *c.* 11, extends to bonds payable by instalments ; and this construction is consistent not only with the letter of the statute, but with the nature of the remedy provided by it, which was to secure the benefit of successive defences against particular instalments subsequently falling due, instead of subjecting the obligor to the entire penalty, on failure to pay a part of the debt secured by it. In the case at bar, an opportunity to plead whatever might be a defence to the subsequent instalment, was not afforded ; nor could the defendant have had it by filing an affidavit, and compelling the plaintiffs to assign their breaches ; for nothing could be assigned that was not a breach at the impetration of the writ—as for instance, the non payment of money that was not then demandable. It is true, that at the common law, the penalty was the substantive, as it was the formal cause of action, and the whole of it became demandable as an entire duty, by the most inconsiderable violation of the obligor's engagement ; the consequence of which was, that he was driven into

another court to seek relief against the most glaring injustice ; but the relief provided by the statute, was adapted to the nature of the greivance, by making each instalment a substantive cause of action. As the penalty was forfeited by a single breach, the plaintiff, in order to escape the consequences of duplicity, had been compelled to select a single default where there were more than one ; and it was to reconcile the remedy for this inconvenience to the common law form of the judgment, as well as to protect the obligor from payment of more than should be actually due, that the penalty was still treated as an entire duty in contemplation of law, but in reality, as a security for what were substantially separate and distinct debts, though created by the same instrument. The *scire facias*, therefore, is as much the originating process in respect of instalments not demandable at the inception of the suit, as would be an original writ, were they secured by separate penalties ; and it seems to be conceded, that it would be indispensable here, were it not for a contrary practice supposed to have prevailed since the decision in *Sparks* v. *Garrigues*, 1 *Binn.* 152, and to have acquired a force superior to that of the statute, which having been extended to this country only by practice, can claim, it is said, no more respect than is due to any other law that is founded in domestic usage. It would not, I presume, be contended that a statute extended to this country by express provision, obtains not by force of the legislative power ; or that standing unrepealed by our own legislature, it is less obligatory here than an act of assembly passed before the declaration of our independence : and why a statute extended by practice, should not also have the force of a legislative act, I am unable to understand. The fact of submission to its dictates, operates but as evidence of the legislative will, admitted by the acquiescence of the people ; but the question of extension once settled, the statute, or so much of it as has been adopted, operates by its inherent power. It is for this reason that we have held ourselves bound by the statutes of the mother country as firmly as by our own. But the matter does not rest on conclusions to be drawn from general principles. By the act of the 28th of January 1777, it was declared that acts of assembly in force on the 14th of May preceding, should be in force from the 10th of February ensuing, " as fully and effectually, to all intents and purposes, as if the said laws and each of them, had been made or enacted by this general assembly ; and the common law, AND SO MUCH OF THE STATUTE LAWS OF ENGLAND AS HAVE HERETOFORE BEEN IN FORCE IN THE SAID PROVINCE." If then the statute of *William* be thought to require legislative sanction in order to raise the character of its provisions above the level of prescription, here we have it : and it would therefore seem that these provisions are no more to be repealed by decision, or their construction varied by practice, than if they were re-enacted here in terms. Neither can the convenience and despatch of a summary award of execution add a particle of force to the argument. To dispense with the *scire facias* in respect to a part of the demand, to which the de-

fendant has not had an opportunity to plead, by calling on him to respond instanter to a motion for execution, would be not merely to dispense with the ordinary process of the law, but materially to change the established order of proceeding as regards the trial by jury. The court would doubtless direct an issue if there were ground to suspect the existence of a defence; but the benefit of a trial by jury would be held by no better tenure than the discretion of the judge, instead of being what it really is, a constitutional franchise, demandable of right and in the first instance. It would be equally convenient and conducive to despatch, to make an execution the first process in the case of a bond for a gross sum, whenever no probable ground of defence should appear; yet no one will pretend that an award of execution on motion ought in that case to be substituted for a judgment on a declaration and original writ. To say that the court would be bound to direct an issue *ex debito justiciæ,* is to say nothing. That would make the summary award of execution depend on a previous waiver of the *scire facias;* and no one pretends that there is any thing in the statute to forbid such a waiver. What I object to, is an arbitrary determination of the question of defence by the court *in limine.* But what was in fact the point decided in *Sparks* v. *Garrigues,* and what is the practice to which it is supposed to have given birth? The question had respect to the form of a judgment in an action on a bond for interest, payable annually till the principal should become due; and the difficulty was, how to frame the judgment so as to give further recourse on the bond for future arrears and the principal when demandable. The chief justice furnished a very satisfactory, and it seems to me, a very obvious solution of it, on the usual judgment for the penalty as a security. In fact the difficulty had been disposed of in *Collins* v. *Collins,* already cited, which was essentially the same case, but stronger, inasmuch as there was actually a sum to be defalcated, in which case the statute of set off, there, as here, directs the judgment to be for the residue; and it is not a little remarkable, that a leading case of such importance should have been passed without notice by the counsel or the court. But in demonstrating the practicability of applying a general judgment, to the enforcement of future payments, the chief justice inadvertently said, that the plaintiff must move the court for future executions. Whether the course of ulterior proceeding were by motion or by *scire facias,* being no part of the inquiry, was a subject to which his attention was not particularly drawn; and what was said being intended merely to illustrate the position taken in respect to the form of the judgment, was predicated, it is not too much to say, without that attention to extreme accuracy for which he was certainly remarkable in delivering his judgment on the point decided. Had his researches been directed to the subject of the present question, he would have perceived, at once, that *Howell* v. *Hanforth,* 2 *W. Bl. Rep.* 1016, and *Ogilvie* v. *Foley,* 2 *W. Bl. Rep.* 1111, in which the notion of a summary award of execution was first started, had

[Longstreth and Cook v. Gray.]

been overruled, and the suggestion of breaches deemed indispensable, as indeed it appears to be by the letter of the statute itself, which is peremptory. Either, then, *Sparks* v. *Garrigues* was not supposed to be within the purview of the statute, or the chief justice's recollection of the practice was misled by the two apocryphal cases just mentioned ; or, what is more probable, by the very practice whose origin has since been attributed to what then fell from him, but which has long prevailed, here and elsewhere, in relation to judgments *on warrants of attorney.* These have never been treated as within the statute,(*a*) because its terms are applicable to none but judgments in actions depending, and rendered on verdict, demurrer, confession, or *nil dicit ;* which a judgment on warrant of attorney is not. In the case of such a judgment, the practice has undoubtedly been to award execution on motion, for instalments already liquidated, as they successively become due. I have known many instances of it, without being able to call to recollection a single one in which the same practice was applied to a judgment in an action that had been depending. That there have been exceptions, in the courts of a state, where the practice has been so loose and indeterminate as ours has been for the last twenty years, is altogether probable ; but that there has been such a uniformity of procedure as to acquire the force of law, on the principle of *communis error*, or even a title to respect on the score of consistency, is confidently denied. In conclusion, it is believed that both the decision in *Sparks* v. *Garrigues*, and the practice of our courts, as far as it can be ascertained, are entirely consistent with the provisions of the statute, which, in a case like the present, are decisively adverse to a summary award of execution.

The plaintiffs took nothing by their motion.

ROGERS, J.—I object to the opinion just delivered, because it overturns a practice of at least twenty-six years ; and that without, so far as I can perceive, the least necessity. In *Sparks* v. *Garrigues*, Chief Justice *Tilghman* directed the course to be pursued, on an application similar to the present, in language which it is impossible to mistake. It is, however, said, that the point is not directly decided; and I admit that it is not ; but, when a practice has generally obtained, in conformity to a recommendation of the chief justice of this court, implicitly sanctioned by his colleagues, it seems to me it deserves all the respect of a solemn decision. I do not claim the observance of the rule as a *dictum*, but because it has been acted upon by bench and bar, from that time until the present. In *Sparks* v. *Garrigues*, the principal question was, in what manner the judgment should be entered, whether for the penalty or for the interest, for which suit was brought.

(*a*) See *Austerbury* v. *Morgan*, 2 *Taunton* 195 ; *Cox* v. *Rodbard*, 3 *Taunton* 74, and *Kinnersly* v. *Mussen*, 5 *Taunton* 264.

[Longstreth and Cook v. Gray.]

On that question there was great diversity of opinion ; but it was admitted by the whole bench, that, on principle, it was the same as a suit brought on a bond, payable by instalments; and on that ground it was relied that the judgment should be entered for the penalty.    In answer to an objection made at the bar, (for the case appears to have been examined with great care) the chief justice indicates the course to be pursued, in collecting the interest that might thereafter become due.    It has been also objected, says that excellent man and experienced judge, that on an entry of judgment for the penalty, the defendant will be debarred from the benefit of a defence, founded on circumstances arising after the commencement of the action.    But that is not this case.    The plaintiff, in the first instance, is only allowed to take out execution for the sum due, when the action was commenced ; *he must move the court for future executions ;* and then, if it be made appear that the defendant has a defence other than that which has been tried, and arising subsequently to the suit, the court have it in their power to see that justice shall be done.    It is extremely convenient, and prevents a multiplicity of suits, to enter judgment for the penalty of a bond, and to give permission to the plaintiff to take out execution for the different sums as they become due, according to the condition.

It is said that the chief justice refers to a judgment confessed on a warrant of attorney.    In answer to this I have to remark, that the case has not been so understood ; nor can it be, with any appearance of plausibility, so construed.    *Sparks* v. *Garrigues* is not a judgment on a warrant of attorney, but is a judgment for the penalty of a bond, rendered on a verdict ; and that there is a difference between such a judgment and a judgment by default, passes my comprehension.    It was in reference to the case itself in which the opinion was delivered, that the chief justice indicated the course to be pursued, and there can be little doubt, that, if it became necessary, that course was pursued.    It is unnecessary to contend that the other members of the court expressly concurred in the reasoning of the chief justice. It is sufficient for my purpose that they did not dissent ; and that the practice has been in conformity to it.    I have had an opportunity of consulting with some of the members of the bar, who concur with me, that such has been the understanding of the bar and bench, and that the practice has been as there stated since the case in 1 *Binn.*    In addition to this, we have the experience of at least one other of the members of the court.    Supported, then, by this authority, the plaintiff asks the court to award him an execution, and this we refuse, without special cause, on the ground of some decisions which have been in England, on the stat. of 9 and 11 *William 3.* I would not wish to be understood as denying the authority of that statute in Pennsylvania ; it has been adopted by our courts in practice ; and the same tribunal which gave it validity, has also given it a construction, and on this the plaintiff relies.    It will be conceded that if such practice exists, it would be unwise to disregard it, except

[Longstreth and Cook v. Gray.]

from necessity. To use the strong language of the present chief justice, in *Bety's appeal*, with a little variation, nothing but the presence of an overwhelming mischief should lead us to disregard settled constructions, or uniform practice. That there is a necessity for a change remains yet to be proved. A plaintiff applies to the court for leave to take out execution, and this is granted, unless notice, which is always required, be given the defendant, and he shows a defence other than that which has been tried, and arising subsequent to the suit. If the defendant has a defence, the court simply refuses to interfere, and the plaintiff must sue out a *scire facias*, or suggest breaches on the rule, in conformity to the statute. It is said by Chief Justice *Tilghman*, that this is a convenient practice, and that it prevents a multiplicity of suits. But that is not its only recommendation. I speak of Pennsylvania, not of England. It is a safe, speedy, and cheap practice. Why should a plaintiff be put to a *scire facias*, when there is no defence ? In England, the answer is obvious, where costs are almost considered as a vested right. But not so, and I hope it never will be so, in Pennsylvania. The only effect will be to increase costs, and incur delay, and that for no other purpose, that I can perceive, than to assimilate our practice to the decisions which have been made in England, under the statutes of 8 and 9 *William*. No complaint has yet been made of the operation of the rule, and why change it ? Independent of the construction which has been given to the statute of *William*, it will be difficult to give a reason, none has been attempted, why a different course should be pursued, on a judgment by a default, and on a verdict on a judgment confessed. The trial by jury is secured to the party in the one case, as much as the other. If he has a defence to the original action, he should suffer judgment by default. If his defence arises afterwards, he is also equally sure of a trial by jury ; for, it must be recollected, that the court will not grant leave to take out execution, except the plaintiff gives the defendant notice of his intended application, and this for the purpose of giving the defendant an opportunity to show that he has a defence against the plaintiff's demand.